# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

HAROLD DAVIS,

     Movant,

v.

                                 Cv. No. 2:19-cv-02286-SHM-tmp
                                 Cr. No. 2:14-cr-20310-SHM-01

UNITED STATES OF AMERICA,

     Respondent.

## ORDER GRANTING MOTION TO SUPPLEMENT
## ORDER DENYING & DISMISSING MOTION PURSUANT TO 28 U.S.C. § 2255
## ORDER DENYING CERTIFICATE OF APPEALABILITY
## ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
## AND
## ORDER DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

Before the Court are the motion pursuant to 28 U.S.C. § 2255 ("§ 2255 motion") and the motion to supplement filed by Movant Harold Davis.  (ECF Nos. 1 & 26.)  The motion to supplement is **GRANTED**.  On August 9, 2019, the United States filed a response contending that Movant's § 2255 motion is without merit.  (ECF No. 15.)  For the reasons stated below, the § 2255 motion is **DENIED**.

## I.  PROCEDURAL HISTORY

### A.  Criminal Case No. 2:14-20310-SHM-01

On November 13, 2014, a federal grand jury in the Western District of Tennessee returned a two-count indictment against Davis charging him with sex trafficking of a minor, in violation of 18 U.S.C. §§ 1591(a)(1) and (2),(b)(1) and (2), and (c) (Count One), and use of a facility of interstate commerce to promote an unlawful activity, in violation of 18 U.S.C. §§ 1952(a)(2) and (3) (Count Two).  (Criminal ("Cr.") ECF No. 1.)  A trial was scheduled for March 10, 2015.  (Cr. ECF No. 18.)  On March 3, 2015, Davis filed a motion in limine seeking to preclude the Court

from instructing the jury on 18 U.S.C. § 1591(c). (Cr. ECF No. 23.)  On March 8, 2015, the United

States filed a motion to continue the trial due to a material government witness' family emergency.

(Cr. ECF No. 28.)  The trial was reset for April 28, 2015.  (Cr. ECF No. 31.)  On April 27, 2015,

the Court ruled on pending motions in limine and  denied Davis' motion to preclude jury

instructions on 18 U.S.C. § 1591(c).  (Cr. ECF No. 35.)  Based on the denial of that motion, the

defense requested a continuance for additional time to prepare.  (Cr. ECF No. 37.)  The Court

granted the motion for a continuance, and the trial was reset for June 22, 2015.  (Cr. ECF No. 36.)

Additional continuances were granted.  (Cr. ECF Nos. 41, 45, 51, 70, 74 & 79.)

From March 29 through April 5, 2016, this Court presided at a jury trial, at which the jury

found Davis guilty as charged. (Cr. ECF Nos. 81, 83, 85-87.)

The United States Probation and Pretrial Services prepared a Presentence Investigation

Report ("PSR") calculating Davis' advisory guideline range at 188 to 235 months in prison.  (Cr.

ECF No. 105, PSR ¶ 83.)  The United States filed no objections to the PSR.  (Cr. ECF No. 104.)

Davis' counsel filed objections to the guideline calculations and a request for a downward variance

from the guideline range.  (Cr. ECF No. 119.)  On December 21, 2016, Davis' counsel filed an

amended position.  (Cr. ECF No.128.)

The Court conducted a sentencing hearing on December 29, 2016, determined the

applicable guideline range to be 151 to 188 months in prison,[1] and sentenced Davis to 151 months

in prison on Count One and 40 months in prison on Counts Two, to be served concurrently.  (Cr.

ECF Nos. 129, 131.)  On December 30, 2016, Davis appealed.  (Cr. ECF No. 133.)  The United

---

[1]The Court determined that a two-level enhancement under United States Sentencing Guideline ("U.S.S.G.") § 2G1.3B4A for sexual contact did not apply.  (Cr. ECF No. 134 at 89.)

States Court of Appeals for the Sixth Circuit summarized the evidence presented at Davis' trial

while analyzing Davis' claim that the trial court had constructively amended Davis' indictment:

> Davis convinced his then-girlfriend, Yanisha Rivera, to prostitute herself. The two operated out of a hotel in Memphis, Tennessee, and used Backpage.com—a website known to facilitate prostitution—to set up "dates." Davis then recruited a minor female, D.B., to join their "team," and arranged a date at a hotel for Rivera and D.B. to "work" together on the evening of June 7, 2014. The trio went to the hotel. But Davis "thought it was a setup," so they left in Davis's car.
>
> As coincidence would have it, Deputy Richard McKinney of the Shelby County Sheriff's Department stopped the car shortly after it left the hotel because it had expired registration tags. The deputy then detained Davis for failing to have a valid driver's license, secured Rivera and D.B., and conducted a consent search of the car. The search revealed indicia of sex trafficking—numerous bags of condoms, lingerie, lubricant, and hygiene products. Acting on his suspicion, Deputy McKinney searched Backpage.com for Davis's phone number. That search yielded an advertisement that promoted an "80 Dollar Special" for "2 Girl[s]" in Memphis and specifically featured pictures of Rivera and D.B.
>
> Deputy McKinney ticketed all three for promoting prostitution in violation of Tennessee Code § 39-13-515, and also ticketed D.B. for criminal impersonation in violation of Tennessee Code § 39-16-301 because she would not correctly identify herself (she provided several different names, Social Security numbers, and dates of birth). Authorities later conclusively determined D.B.'s identity and discovered she was seventeen years of age. (Davis disputes he knew D.B. was a minor, claiming D.B. told him she was nineteen.)

*United States v. Davis*, No. 17-5010, 711 Fed. App'x 254, 255-56 (6th Cir. Oct. 3, 2017).

**B.    Civil Case Number 19-2345-SHM-tmp**

On May 3, 2019, Movant filed the § 2255 motion alleging that:

(1)    Counsel provided ineffective assistance:

(a)    by acquiescing in the Court's denial of the motion in limine regarding the § 1591 jury instruction (ECF No. 1-1 at 5-7),

(b)    by failing to file a motion to suppress the testimony of Davis' girlfriend Yanisha Rivera, who was "threatened and coerced by the government", and by failing to call the victim as a witness at trial (*id.* at 7),

(c)      by conceding that the case involved prostitution during the opening statement (*id.* at 8-11),

(d)      by failing to object to use of the victim's statements from the PSR as a violation of *Brady v. Maryland*, 373 U.S. 83 (1963) (*id.* at 12-13), and

(e)      by failing to raise defective indictment and improper jury instructions claims on direct appeal (*id.* at 13, ECF No. 26 at 7-10).

(2)      The trial court should not have instructed the jury on the § 1591(c) theory of culpability because it was not contained in the indictment (ECF No. 1-1 at 14-21, ECF No. 26 at 9-10).

(3)      The Government committed prosecutorial misconduct by misstating the Court's interpretation of § 1591 throughout the trial (ECF No. 1-1 at 21-22, 29-32).

(4)      The indictment was constructively amended by the trial evidence and the Court's instruction on § 1591 (*id.* at 22-26, ECF No. 26 at 10-13).

(5)      The indictment was defective and failed to inform Davis of the offense charged (ECF No. 1-1 at 26-29).

## II.      LEGAL STANDARDS

Pursuant to 28 U.S.C. § 2255(a),

[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (citation and internal quotation marks omitted).

A § 2255 motion is not a substitute for a direct appeal. *See Bousley v. United States*, 523 U.S. 614, 621 (1998). "[N]onconstitutional claims that could have been raised on appeal, but were

4

not, may not be asserted in collateral proceedings." *Stone v. Powell*, 428 U.S. 465, 477 n.10 (1976). "Defendants must assert their claims in the ordinary course of trial and direct appeal." *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996). This rule is not absolute:

> If claims have been forfeited by virtue of ineffective assistance of counsel, then relief under § 2255 would be available subject to the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In those rare instances where the defaulted claim is of an error not ordinarily cognizable or constitutional error, but the error is committed in a context that is so positively outrageous as to indicate a "complete miscarriage of justice," it seems to us that what is really being asserted is a violation of due process.

*Grant*, 72 F.3d at 506.

Even constitutional claims that could have been raised on direct appeal, but were not, will be barred by procedural default unless the defendant demonstrates cause and prejudice sufficient to excuse his failure to raise these issues previously. *El-Nobani v. United States*, 287 F.3d 417, 420 (6th Cir. 2002) (withdrawal of guilty plea); *Peveler v. United States*, 269 F.3d 693, 698-99 (6th Cir. 2001) (new Supreme Court decision issued during pendency of direct appeal); *Phillip v. United States*, 229 F.3d 550, 552 (6th Cir. 2000) (trial errors). Alternatively, a defendant may obtain review of a procedurally defaulted claim by demonstrating his "actual innocence." *Bousley*, 523 U.S. at 622.

After a § 2255 motion is filed, it is reviewed by the Court and, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion . . . ." Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts ("Section 2255 Rules"). "If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order." *Id.* The movant is entitled to reply to the Government's response. Rule 5(d), Section 2255 Rules. The Court may

also direct the parties to provide additional information relating to the motion.  Rule 7, Section 2255 Rules.

"In reviewing a § 2255 motion in which a factual dispute arises, 'the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims.'"  *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)).  "'[N]o hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'"  *Id.* (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)).  Where the judge considering the § 2255 motion also presided over the criminal case, the judge may rely on his or her recollection of the prior case.  *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996); *see also Blackledge v. Allison*, 431 U.S. 63, 74 n.4 (1977) ("[A] motion under § 2255 is ordinarily presented to the judge who presided at the original conviction and sentencing of the prisoner.  In some cases, the judge's recollection of the events at issue may enable him summarily to dismiss a § 2255 motion . . . .").  Defendant has the burden of proving that he is entitled to relief by a preponderance of the evidence.  *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

A claim that ineffective assistance of counsel has deprived a defendant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984).  To demonstrate deficient performance by counsel, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness."  *Id.* at 688.

> A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance.  [*Strickland*, 466 U.S.] at 689.  The challenger's burden is to show "that counsel made errors so serious that counsel was not

functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."
*Id.*, at 687.

*Harrington v. Richter*, 562 U.S. 86, 104 (2011).

To demonstrate prejudice, a prisoner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.[2]  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

> It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." [*Strickland*, 466 U.S.] at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*, at 687, 104 S. Ct. 2052.

*Richter*, 562 U.S. at 104; *see also id.* at 111-12 ("In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. . . . The likelihood of a different result must be substantial, not just conceivable." (citations omitted)); *Wong v. Belmontes*, 558 U.S. 15, 27 (2009) (per curiam) ("But *Strickland* does not require the State to 'rule out' [a more favorable outcome] to prevail.  Rather, *Strickland* places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different." (citing *Strickland*, 466 U.S. at 694)).

"Surmounting *Strickland*'s high bar is never an easy task."  *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

---

[2]"[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant." *Strickland*, 466 U.S. at 697.  If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient. *Id.*

An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S. Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.*, at 689, 104 S. Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S. Ct. 2052.

*Richter*, 562 U.S. at 105.

## III.   ANALYSIS

### A.   <u>Ineffective Assistance</u>

#### 1(a).   Counsel provided ineffective assistance by "acquiescing" in the Court's denial of the motion in limine regarding the § 1591 jury instruction (ECF No. 1-1 at 5-7).

Davis' motion in limine sought to preclude any instruction under 18 U.S.C. § 1591(c), contending it was an alternative theory of liability that was not alleged in the indictment. (*Id.*, Cr. ECF No. 23.) Davis contends that counsel "acquiesced" in the Court's denial of the motion. The United States responds that, contrary to Davis' allegations, Davis' attorney continued to "vigorously litigate this issue" by raising it in the motion for judgment of acquittal and on direct appeal. (ECF No. 15 at 6.) Davis clarifies in the motion to supplement that his argument is "limited to the context of his pre-trial proceedings." (ECF No. 26 at 3.) Davis contends that, based on "the overwhelming amount of Supreme Court and Sixth Circuit precedent" and Congress' "Clarifying Amendment", trial counsel should have re-submitted the motion in limine to the Court. (*Id.* at 4.)

The United States has provided the affidavit of trial counsel, Mary C. Jermann-Robinson, who responds to this allegation, in pertinent part, stating:

> Mr. Davis first alleges I was ineffective in my representation of him by failing to challenge the use of Section 1591(c)'s "reasonable opportunity to observe" instruction as a constructive amendment to the guideline [sic]. This is completely untrue. Counsel raised the issue in a pre-trial motion, renewed the motion at the close of proof, challenged it in a motion for new trial, and preserved and argued that issue on appeal.

(ECF No. 15-1 at 3, ¶ 4.) Counsel's recollection is fully supported by the record in Case No. 2:14-20310-SHM-01.

At the hearing on the motion in limine, the Court stated:

> There's a motion in limine to preclude jury instruction on 18, United States Code, Section 1591(c). . . . I don't see it as a constructive amendment. It's just a different way of proving the same crime, both under the case law and – well, under the case law. It's not unconstitutionally vague. So, my inclination is that motion's denied.

(Cr. ECF No. 135 at 20.)

The indictment charged Davis with violating 18 U.S.C. § 1591(c). The instructions properly tracked the statute cited in the indictment, the government's evidence, and the elements of § 1591(a). Counsel does not perform deficiently by accepting the Court's ruling. Counsel properly preserved the issue, raising it subsequently each time that it was appropriate. Davis presents no argument that counsel could have made during the hearing on the motion in limine that would have changed the Court's ruling. Counsel does not perform deficiently by refraining from repeated arguments with the Court's decisions. Issue 1(a) is without merit and is **DENIED**.

> **1(b).   Counsel provided ineffective assistance by failing to file a motion to suppress the testimony of Davis' girlfriend Yanisha Rivera, who was "threatened and coerced by the government", and by failing to call the victim as a witness at trial (ECF No. 1-1 at 7).**

9

Davis contends that counsel provided ineffective assistance by failing to file for "an evidentiary or suppression hearing" after Davis' girlfriend "confided in [Davis] by phonecall that she was threatened and coerced by the Government with a prison term and to take her son from her if she did not co-operate with them." (*Id.*) Davis also alleges that his "Sixth Amendment right to face his accuser" was denied because trial counsel did not produce the victim at trial. (*Id.*) The United States responds that these claims are without merit. (ECF NO. 15 at 7.) Attorney Jerman-Robinson has addressed this issue in part, stating:

> Mr. Davis also alleges that I failed to file a motion to suppress a witness' statements as made under coercion. Mr. Davis failed to note that I did not have standing to raise the issue on behalf of this witness. Further, this witness was thoroughly cross-examined about the potential for coercion during the trial using the type of language stated in his motion.

(ECF No. 1-1 at 3, ¶ 4.)

Defense counsel did not have standing to raise violations of Rivera's rights. Davis provides no affidavit from Rivera to support the allegations of threats and coercion. Davis' unsupported allegations fail to establish prejudice or deficient performance. This aspect of Issue 1(b) is **DENIED**.

The morning Davis' trial began, the United States announced that, despite multiple attempts to locate the victim, the victim could not be found. (Cr. ECF No. 100 at 46-47.) Trial counsel was not obligated to anticipate this last hour development. Davis does not explain how trial counsel could have located the victim. Davis fails to allege any fact demonstrating that the victim's testimony would have benefitted him. Davis' conclusory allegations about the testimony of one uncalled witnesses are insufficient to demonstrate prejudice. *United States v. Vargas*, 920 F.2d 167, 169-70 (2d Cir. 1990); *Adams v. Jago*, 703 F.2d 978, 981 (6th Cir. 1983). Issue 1(b) is **DENIED**.

**1(c).   Counsel provided ineffective assistance by conceding that the case involved prostitution during the opening statement (ECF No. 1-1 at 8-11).**

Davis contends that counsel provided ineffective assistance when she stated, "Let's get this out of the way right away.  The Government is not going to have to prove that prostitution was involved.  I'm telling you . . . prostitution was involved." (*Id.* at 8.)  Davis alleges that it was error to concede his guilt and against his wishes.  (*Id.*)  The United States responds that this was a reasonable defense strategy given the overwhelming evidence of prostitution.  (ECF No. 15 at 9.)

Trial counsel has addressed this allegation, stating:

> Mr. Davis asserts that he was not consulted concerning trial strategy and that admissions were made without his knowledge.  This again is not the case.  I discussed trial strategy in great depth with Mr. Davis.  He agreed with the strategy used at trial.

> Counsel does not recall if she gave the opening statement, or the exact content of it.  However, she is certain that she did not make an admission for her client without consulting him first.  Further, even if Counsel did state that prostitution was involved in the factual scenario, that is not an admission as to the acts of the defendant.

(ECF No. 15-1 at 3, ¶¶ 6-7.)

The Court recalls that Davis was an active participant in pre-trial and trial proceedings.  Counsel regularly consulted with Davis.  Admitting that the case involved prostitution was a reasonable strategy where the evidence of prostitution was overwhelming and did not conflict with Davis' defense that he did not know that D.B. was a minor.  Davis cannot establish that the strategic decisions by experienced, capable counsel were deficient.  Issue 1(c) is **DENIED**.

**1(d).   Counsel provided ineffective assistance by failing to object to use of the victim's statements from the PSR as a violation of *Brady* (ECF No. 1-1 at 12-13).**

11

Davis contends that counsel should have "filed for a violation [of] *Brady*" because the PSR contained statements by the victim that had not been provided to the defense before and during the trial. (*Id.* at 12.) Specifically, Davis contends that the victim's statements to law enforcement contained in paragraph 8 of the PSR should have been disclosed. (*Id.*) The United States responds that there was no *Brady* violation. (ECF No. 15 at 11.)

The Due Process Clause is violated when prosecutors withhold from the defense evidence favorable to the accused where the evidence is material either to guilt or punishment. That duty to disclose "is applicable even though there has been no request by the accused . . . , and . . . the duty encompasses impeachment evidence as well as exculpatory evidence." *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (citation omitted). A *Brady* violation has three components: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Id.* at 281-82. A showing of prejudice requires that the suppressed evidence be material. Evidence is "material" for *Brady* purposes if "there is a reasonable probability that the result of the trial would have been different if the suppressed [evidence] had been disclosed to the defense." *Strickler*, 527 U.S. at 289 (internal quotation marks omitted); *see also United States v. Bagley*, 473 U.S. 667, 682 (1985) ("The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.") (internal quotation marks omitted).

> [A] showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal (whether based on the presence of reasonable doubt or acceptance of an explanation for the crime that does not inculpate the defendant). *Bagley*'s touchstone of materiality is a reasonable probability of a different result,

> and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A "reasonable probability" of a different result is accordingly shown when the government's evidentiary suppression undermines confidence in the outcome of the trial.

*Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (internal quotation marks and citations omitted).[3] This standard is similar to the "prejudice" component of an ineffective assistance of counsel claim. *Id.* at 436; *Bagley*, 473 U.S. at 682; *cf. United States v. Agurs*, 427 U.S. 97, 112-13 (1976) ("The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt. Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt.") (footnotes omitted).

The PSR states:

> On June 25, 2014, agents with the Federal Bureau of Investigation (FBI) interviewed D.B. at the Memphis Police Department. D.B. was 15 years old at the time of the interview. D.B. was in the custody of the Tennessee Department of Children's Services (DCS) and was located by local law enforcement officers after running away from a foster home on June 12, 2014. According to D.B., she was on runaway status from DCS custody since March 2014. While on runaway status, D.B. met Harold Davis who she knew as a "pimp" named "Brandon." D.B. first met Davis while she was walking near Hollywood Street and Chelsea Avenue in

---

[3]The Supreme Court emphasized, however, that this standard is not satisfied by a showing that the suppressed evidence "might" have changed the outcome of the trial. *Strickler*, 527 U.S. at 289; *see also id.* at 291 (a petitioner must establish a reasonable probability, rather than a reasonable possibility, of a different result).

Memphis, Tennessee.  D.B. stated that she had contact with Davis over a period of about two weeks.

(Cr. ECF No. 105 at 5, ¶ 8.)  Trial counsel objected to the paragraph, stating:

> With respect to paragraph 8, Mr. Davis does not know what "D.B." told the agents. However, he would like to clarify that he has never been known as "Brandon." Counsel for the Defendant is aware that there is a "pimp" by the name of Brandon who is alleged to promote the prostitution of minors in the city of Memphis and elsewhere.  This information potentially has the characteristics of *Brady* material, and Counsel requests that she be permitted to inspect the statement referred to in this paragraph.  Mr. Davis also objects to the statement that "D.B." knew him for two weeks.  In this jury trial, the proof showed that Mr. Davis' contact with "D.B." was minimal.  The facts proven in the trial show that the entire ordeal took place within a day.

(Cr. ECF No. 119 at 2, ¶4.)

Davis' objection was discussed during the sentencing hearing.  (Cr. ECF No. 136 at 7-15, 20.)  Trial counsel requested permission to review the victim's statement to determine if it contained "potentially exculpatory" evidence.  (*Id.* at 10.)  The United States offered to put the case agent on the stand to testify about the interviews with "D.B" to dispel any *Brady* implications. (*Id.* at 9.)  The victim gave no written statement; the investigative report was written by the case agent.  (*Id.* at 15.)  Although the investigative report was potentially useful for impeachment of the victim had she testified at trial, the victim did not testify, and the statements were not material to Davis' guilt or sentence.  Counsel withdrew the objection.  (*Id.* at 20-21.)

Contrary to Davis' allegations, trial counsel did raise a *Brady* objection to the statements contained in the PSR.  Counsel withdrew the objection when there was no basis for a *Brady* violation.  Issue 1(d) is without merit and is **DENIED**.

> **1(e).  Counsel provided ineffective assistance by failing to raise defective indictment and improper jury instruction claims on direct appeal (ECF No. 1-1 at 13, ECF No. 26 at 7-10).**

14

Davis contends that counsel failed to raise a defective indictment claim, separate from the constructive amendment to the indictment claim, on direct appeal.  (ECF No. 26 at 7.)  Davis alleges that the defective indictment claim arose from his "Sixth Amendment right to be informed of the nature and cause of the accusation."  (*Id.* at 7-8.)  Davis also contends that counsel failed to raise the improper jury instruction claim as a violation of his right to Due Process.  (*Id.* at 9-10.)

A criminal defendant is entitled to the effective assistance of counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  The failure to raise a nonfrivolous issue on appeal does not constitute *per se* ineffective assistance of counsel, as "[t]his process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."  *Smith v. Murray*, 477 U.S. 527, 536 (1986) (internal quotation marks and citation omitted).  Claims of ineffective assistance of appellate counsel are evaluated using the *Strickland* standards.  *Smith v. Robbins*, 528 U.S. 259, 285–86 (2000) (applying *Strickland* to claim that appellate counsel rendered ineffective assistance by failing to file a merits brief); *Smith*, 477 U.S. at 535–36 (failure to raise issue on appeal).  To establish that appellate counsel was ineffective, a prisoner

> must first show that his counsel was objectively unreasonable in failing to find arguable issues to appeal – that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them. If [the prisoner] succeeds in such a showing, he then has the burden of demonstrating prejudice. That is, he must show a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal.

*Smith,* 528 U.S. at 285 (citation omitted).

The process of winnowing out weaker arguments on appeal is "the hallmark of effective appellate advocacy."  *Monzo v. Edwards*, 281 F.3d 568, (6th Cir. 2002).  "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome."  *Id.* (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir.

15

1986)).  Defendant must show that "there is a reasonable probability that inclusion of the issue

would have changed the result of the appeal."  *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir.

2004).

Count One of Davis' indictment alleged:

> During in or about May, 2014, through in or about June, 2014, in the
> Western District of Tennessee, the defendant
>                            HAROLD DAVIS
> Did knowingly recruit, entice, harbor, transport, provide, obtain, and maintain by
> any means, in and affecting interstate commerce, D.B., a minor whose identity is
> known to the Grand Jury, and did benefit, financially and by receiving something
> of value, knowing and in reckless disregard of the fact the D.B. had not attained
> the age of 18 years and would be caused to engage in a commercial sex act, and
> knowing that force, fraud, and coercion would be used to cause D.B. to engage in
> a commercial sex act; all in violation of Title 18, United States Code, Sections
> 1591(a)(1) and (2), (b)(1) and (2), (c), and Section 2.

(Cr. ECF No. 1 at 1.)

Under Rule 7(c)(1) of the Federal Rules of Criminal Procedure, an indictment is required

to include "a plain, concise, and definite written statement of the essential facts constituting the

offense charged."  In evaluating criminal indictments, the Sixth Circuit has deemed an indictment

sufficient if it "fully, directly, and expressly . . . set[s] forth all the elements necessary to constitute

the offense intended to be punished."  *United States v. Kuehne*, 547 F.3d 667, 696 (6th Cir. 2008)

(quoting *United States v. Douglas*, 398 F.3d 407, 411 (6th Cir. 2005)).  "In particular, the

indictment must:  (1) 'set out all of the elements of the charge[d] offense and must give notice to

the defendant of the charges he faces[,]' and (2) 'be sufficiently specific to enable the defendant

to plead double jeopardy in a subsequent proceeding, if charged with the same crime based on the

same facts.'"  *Id.* (quoting Douglas, 398 F.3d at 413).

The indictment against Davis for a violation of 18 U.S.C. §§ 1591(a)(1) and (2), (b)(1) and

(2), (c), and Section 2 satisfies these requirements.  Counsel does not perform deficiently by failing

to raise frivolous issues on appeal.  Despite the framing of the appellate issue, the Sixth Circuit determined that there "was no way in which the presentation of evidence at trial made it likely that [Davis'] conviction on Count 1 was for an offense other than the one charged in the indictment." (*Davis*, 711 Fed. App'x, at 257.)

Counsel contended that the trial court erred by instructing the jury that, if Davis "had a reasonable opportunity to observe "D.B."", the government need not prove that Davis knew "D.B." was under the age of 18 to convict Davis under § 1591.  *Davis*, 711 Fed. App'x at 256.  The Sixth Circuit decided that the trial court's "instructions properly track[ed] the statute cited in the indictment, the government's evidence, and § 1591(a)'s elements." *Id.* at 258.

Davis has not shown that counsel ignored issues that were clearly stronger than the issue counsel chose to raise.  Davis has not demonstrated a reasonable probability that the inclusion of any other issue would have changed the result of the direct appeal.  Davis has failed to demonstrate that counsel performed deficiently and has not demonstrated that he was prejudiced.  Issue 1(e) is **DENIED**.

**B.**   **Issues Raised on Direct Appeal:  Issues 2, 4, & 5(ECF No. 1-1 at 13-29, ECF No. 26 at 9-13).**

Davis contends that the Court should not have instructed the jury on the 1591(c) theory of culpability because it was not contained in the indictment, that the indictment was constructively amended by the trial evidence and the Court's instruction on § 1591, and that the indictment was defective and failed to inform Davis of the offense charged.  (*Id.*)

On direct appeal, the Sixth Circuit opined:

At the time of defendant's offense conduct, 18 U.S.C. § 1591(a) (2012) provided in pertinent part as follows:

17

> Whoever knowingly—(1) in or affecting interstate or foreign commerce … recruits, entices, harbors, transports, provides, obtains, or maintains by any means a person … knowing, or in reckless disregard of the fact … that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

Subsection (b) then sets forth statutory mandatory minimums. Because D.B. was seventeen years old, this meant at least ten years of imprisonment. § 1591(b)(2). The crux of this case is the next subsection:

> In a prosecution under subsection (a)(1) in which the defendant had a reasonable opportunity to observe the person so recruited, enticed, harbored, transported, provided, obtained or maintained, the Government need not prove that the defendant knew that the person had not attained the age of 18 years.

§ 1591(c). In Davis's view, because his indictment did not mention this "reasonable opportunity to observe" substitute for actual knowledge, the government's evidence and the jury instructions on this substitute constituted a constructive amendment.

The Fifth Amendment prevents the government from trying a defendant on "charges that are not made in the indictment against him." *Stirone v. United States*, 361 U.S. 212, 215–17, 80 S. Ct. 270, 4 L. Ed. 2d 252 (1960). A "constructive amendment" "results when the terms of an indictment are in effect altered by the presentation of evidence and jury instructions which modify essential elements of the offense charged such that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged in the indictment." *United States v. Kuehne*, 547 F.3d 667, 683 (6th Cir. 2008) (citation omitted). We deem constructive amendments "per se prejudicial," for they "infringe upon the Fifth Amendment's grand jury guarantee." *United States v. Hynes*, 467 F.3d 951, 962 (6th Cir. 2006) (citation and brackets omitted). A defendant bears the burden of proving a constructive amendment. *United States v. Ferguson*, 681 F.3d 826, 830 (6th Cir. 2012). Having properly preserved this issue below, we review Davis's claim of error de novo. *United States v. Beasley*, 583 F.3d 384, 389 (6th Cir. 2009).

"To determine whether a constructive amendment has occurred . . . , we review the language of the indictment, the evidence presented at trial, the jury instructions and the verdict forms utilized by the jury." *Kuehne*, 547 F.3d at 683–84. We begin and, for the most part, end our inquiry upon examination of the face of the indictment. Count 1 provides that defendant:

> did knowingly recruit, entice, harbor, transport, provide, obtain, and maintain by any means, in and affecting interstate commerce, D.B.,

a minor whose identity is known to the Grand Jury, and did benefit, financially and by receiving something of value, knowing and in reckless disregard of the fact that D.B. had not attained the age of 18 years and would be caused to engage in a commercial sex act, and knowing that force, fraud, and coercion would be used to cause D.B. to engage in a commercial sex act; all in violation of **Title 18, United States Code, Sections 1591(a)(1) and (2), (b)(1) and (2), (c), and Section 2**.

(Emphasis added.)  As highlighted by the emphasis in the preceding block quote, Davis's indictment specifically calls out subsection (c) as a portion of the statute the grand jury charged him with violating.  Although the indictment does not expressly use the subsection's "reasonable opportunity to observe" language, citation to that subsection—which only addresses that knowledge substitute, and nothing more—sufficed in this circumstance, as it gave "the official or customary citation of the statute . . . that the defendant is alleged to have violated." Fed. R. Crim. P. 7(c)(1); *cf. United States v. Miller*, 471 U.S. 130, 136, 105 S. Ct. 1811, 85 L.Ed.2d 99 (1985) ("As long as the crime and the elements of the offense that sustain the conviction are fully and clearly set out in the indictment, the right to a grand jury is not normally violated by the fact that the indictment alleges more crimes or other means of committing the same crime.").

The government's trial evidence—as further detailed below—generally tracked the theory of liability alleged in the indictment.[4]  As the district court noted below, Davis here too "suggests no way in which the presentation of evidence at trial made it likely that his conviction on Count 1 was for an offense other than the one charged in the indictment."  The same goes for the jury instructions, which provided in relevant part as follows:

The second element of the offense that the Government must prove beyond a reasonable doubt is that "D.B." was under the age of 18 and the defendant knew or recklessly disregarded that fact.

If you find that the defendant had a reasonable opportunity to observe "D.B.," the Government is not required to prove that the defendant knew that "D.B." was under the age of 18.

These instructions properly track the statute cited in the indictment, the government's evidence, and § 1591(a)'s elements. *See also United States v. Mack*, 808 F.3d 1074, 1081 (6th Cir. 2015); *United States v. Jackson*, 622 Fed.Appx. 526, 527–28 (6th Cir. 2015).

---

[4]The verdict form did not detail the elements of Count 1, it just provided the jury with a guilty/not guilty option.

In sum, Davis did not meet his burden that "the evidence presented and the jury instructions" undermined "the important functions of an indictment" so as to establish a constructive amendment.[5]  *Hynes*, 467 F.3d at 962.

(Cr. ECF No. 139 at 5-8, *Davis*, 711 Fed. App'x 254, 256-57.)

A federal prisoner cannot use § 2255 to relitigate a claim that has been decided on direct review, absent "highly exceptional circumstances."  *See DuPont v. United States*, 76 F.3d 108, 110-11 (6th Cir. 1996) (citation omitted).  The relitigation doctrine is an extension of the law-of-the- case doctrine to the collateral review context.  *See White v. United States*, 371 F.3d 900, 902 (7th Cir. 2004); *see also United States v. Moored*, 38 F.3d 1419, 1421-22 (6th Cir. 1994); *cf. Stoufflet v. United States*, 757 F.3d 1236, 1239-42 (11th Cir. 2014) (explaining that the procedural bar against relitigation in the § 2255 context is even more stringent than the law- of-the-case doctrine).

The exception for "extraordinary circumstances" is limited to those situations where there has been an intervening change in the law, usually a new judicial decision narrowly construing the statute of conviction.  *See Davis v. United States*, 417 U.S. 333, 345-47 (1974) (where § 2255 petitioner claimed that, due to a change in law, he was convicted "for an act that the law does not make criminal"); *Jones v. United States*, 178 F. 3d 790, 796 (6th Cir. 1999).  There has been no such intervening change here.

Davis repeats his appellate arguments and insists the appellate court decision was in error. Davis may not raise issues that were unsuccessfully challenged on appeal in a § 2255 motion.  *See DuPont*, 76 F.3d at 111 (where the claim asserted in a habeas petition is substantively identical to

---

[5]Because Davis's indictment expressly charged him with violating § 1591(c), we need not consider—as Davis urges us to do—whether the "reasonable opportunity to observe" provision is a distinct theory of culpability independent from knowledge or reckless disregard. *See*, *e.g.*, *United States v. Lockhart*, 844 F.3d 501, 515–16 (5th Cir. 2016).

20

an issue presented on direct appeal after conviction, "no exceptional circumstances exist"). Issues

Two, Four, and Five are **DENIED**.

 C. **Issue 3: The Government Committed Prosecutorial Misconduct by Misstating the Court's Interpretation of § 1591 Throughout the Trial (ECF No. 1-1 at 21-22, 29-32).**

 Davis contends that the United States mischaracterized the Court's interpretation of § 1591

throughout the case. (*Id.*) The United States replies that this claim is without merit. (ECF No. 15

at 17.)

 Davis has procedurally defaulted Issue Three. A movant is procedurally barred from

raising claims in a § 2255 motion, even those of constitutional magnitude, if no contemporaneous

objection was made and if the claim was not presented on direct appeal. *United States v. Frady*,

456 U.S. 152, 167-68 (1982); *Nagi v. United States*, 90 F.3d 130, 134 (6 th Cir. 1996). Where a

movant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be

raised in a motion under § 2255 only if he first demonstrates cause for the default and prejudice.

*Bousley*, 523 U.S. at 622. Davis does not allege that he asked trial counsel to raise the issue during

trial or that he asked appellate counsel to raise the issue on direct appeal. Issue Three is barred by

procedural default and is **DENIED**.

**IV. CONCLUSION**

 The motion, together with the files and record in this case "conclusively show that the

prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Movant's convictions and sentences are

valid and, therefore, his motion is **DENIED**. Judgment shall be entered for the United States.

**V. APPELLATE ISSUES**

 Pursuant to 28 U.S.C. § 2253(c)(1), the district court is required to evaluate the

appealability of its decision denying a § 2255 motion and to issue a certificate of appealability

("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also* Fed. R. App. P. 22(b).  No § 2255 movant may appeal without this certificate.  The COA must indicate the specific issue or issues that satisfy the required showing.   28 U.S.C. § 2253(c)(2), (3).  A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citation and internal quotation marks omitted); *see also Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (same).  A COA does not require a showing that the appeal will succeed.  *Miller-El*, 537 U.S. at 337; *Caldwell v. Lewis*, 414 F. App'x 809, 814-15 (6th Cir. 2011). Courts should not issue a COA as a matter of course.  *Bradley v. Birkett*, 156 F. App'x 771, 773 (6th Cir. 2005) (quoting *Miller-El*, 537 U.S. at 337).  In this case, for the reasons previously stated, Movant's claims lack substantive merit and are barred by procedural default and, therefore, he cannot present a question of some substance about which reasonable jurists could differ.  The Court therefore **DENIES** a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(a)-(b), does not apply to appeals of orders denying § 2255 motions.  *Kincade v. Sparkman*, 117 F.3d 949, 951 (6th Cir. 1997).  Rather, to appeal *in forma pauperis* in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Fed. R. App. P. 24(a).  *Kincade*, 117 F.3d at 952. Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit.  Fed. R. App. P. 24(a)(1).  However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or

otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court.  *See* Fed. R. App. P. 24(a) (4)-(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith.  It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter would not be taken in good faith, and leave to appeal *in forma pauperis* is **DENIED**.  If Movant files a notice of appeal, he must also pay the full $505 appellate filing fee (*see* 28 U.S.C. §§ 1913, 1917) or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days (*see* Fed. R. App. P. 24(a) (4)-(5)).

**IT IS SO ORDERED,** this 19th day of August 2022.

/s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE